**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| SHERRELL MOSES and ASHLE WILSON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> NISSAN OF NORTH AMERICA, INC, and NISSAN MOTOR CO., LTD. <br><br> Defendants. | Case No.: <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Sherrell Moses and Ashle Wilson ("Plaintiffs") bring this action against Nissan of North America, Inc. and Nissan Motor Co., Ltd. ("Defendants" or "Nissan"), by and through their attorneys, individually and on behalf of all others similarly situated, and allege as follows:

## I.      INTRODUCTION

1.      Plaintiffs bring this action individually and on behalf of all similarly situated persons ("Class Members") who purchased or leased any 2017 through 2018 Model Year Nissan Altima,  2018 through 2019 Model Year Nissan Sentra or 2018-2019 Model Year Nissan Versa and Versa Note vehicle in the United States ("Class Vehicles") that was designed, manufactured, distributed, marketed, sold or leased by Defendants.

2.      Beginning in 2013, if not before, Defendants knew that the Class Vehicles contain one or more design and/or manufacturing defects that can cause their continuously variable transmission ("CVT") to malfunction ("CVT Defect").   A "CVT" is a type of automatic transmission that does not use conventional gears to achieve the various ratios required during normal driving.  Instead, it uses a segmented steel belt between pulleys that can be adjusted to change the reduction ratio in the transmission.  This is supposed to occur smoothly and

continuously. Like a conventional transmission, a CVT is electronically controlled by a Transmission Control Module ("TCM").

3. Numerous Class Vehicle owners have reported a significant delay in the Class Vehicle's response while attempting to accelerate from a stop or while attempting to merge into freeway traffic, or pass another vehicle, which requires the ability to accelerate quickly. This delay in response is typically accompanied with reports of the engine revving while the driver depresses the gas pedal with little to no increase in vehicle speed. Class Vehicle owners have also experienced and reported stalling, jerking, lurching, juddering, and/or shaking while operating their Class Vehicles, as well as premature transmission failure.

4. The CVT Defect has been documented to occur without warning during vehicle operation and poses an extreme and unreasonable safety hazard to drivers, passengers and pedestrians for obvious reasons. These safety hazards include being unable to maintain the proper speed to integrate seamlessly into the flow of traffic, especially on highways or freeways, putting drivers at risk of being rear ended or otherwise causing an accident unless they pull off the road. Two owners complained to the National Highway Transportation Safety Authority ("NHTSA") as follows:[1]

- **NHTSA ID: 11458293, Incident Date March 25, 2022:** CAR WILL ONLY GO IN REVERSE. WHILE DRIVING DOWN A BUSY ROAD MY CAR STOPPED ACCELERATING IN FORWARD AND NOW NO LONGER WILL DRIVE FORWARD AT ALL. I HAVE KEPT UP WITH ALL ROUTINE MAINTENANCE, AND HAD NO WARNING SIGN THAT THIS WAS GOING TO HAPPEN. MY WARRANTY EXPIRED AT 60,000 MILES AND I AM AT 64,000. I BOUGHT THE CAR BRAND NEW IN OCTOBER OF 2018, AND STILL OWE ON IT. SO NOW I AM STUCK WITH A CAR PAYMENT FOR A CAR THAT I CANNOT EVEN DRIVE.

- **NHTSA ID: 11406970 Incident Date November 5, 2018:** CVT TRANSMISSION IS JERKING, STALLING, SHUDDERING, AND HESITATING WHILE DRIVING. CAR ONLY HAS 65K MILES. ISSUE HAS BEEN HAPPENING RANDOMLY FOR ABOUT A WEEK. I DO NOT FEEL COMFORTABLE DRIVING IN THE CAR ANYMORE BECAUSE I FEEL THAT THIS MALFUNCTION CAN EVENTUALLY CAUSE AN ACCIDENT.

---

[1] Spelling and grammatical errors in consumer complaints reproduced herein remain as found in the original.

5.     In addition to these obvious safety hazards, the cost to repair the CVT Defect can be exorbitant.  The Class Vehicles thus differ materially from the product Nissan intended to sell. Nissan intended to produce vehicles with CVTs that shift smoothly and continuously.  Instead, Nissan produced vehicles that do not accelerate when prompted to accelerate, and that shake, shudder, jerk and judder.

6.     Plaintiffs are informed and believe, and based thereon allege, that Defendants knew the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter.  Defendants have actively concealed the true nature and extent of the CVT Defect from Plaintiffs and the other Class Members, and failed to disclose it to them, at the time of purchase or lease and thereafter.  Had Plaintiffs and prospective Class Members known about the CVT Defect, they would not have purchased the Class Vehicles or would have paid less for them.

7.     Plaintiffs are informed and believe, and based thereon allege, that despite notice of the CVT Defect from, among other things, pre-production testing, numerous consumer complaints, warranty data dealership repair orders and prior experience with earlier model vehicles with the same or substantially similar CVTs, Defendants have not recalled the Class Vehicles to repair the CVT Defect, have not offered their customers a suitable repair or replacement free of charge, and have not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the CVT Defect.

8.     Plaintiffs are further informed and believe, and based thereon allege, that despite being on notice of the CVT Defect, Defendants regularly deny the existence of the CVT Defect until after consumers' New Vehicle Limited Warranty Powertrain Coverage ("Powertrain Warranty") has expired or require payment to repair the CVT Defect even while the Class Vehicles are under warranty.

9.     Nissan knew of and concealed the CVT Defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems and associated repair costs, from

Plaintiffs and the other Class Members both at the time of sale or lease and thereafter. As a result of their reliance on Defendants' omissions, owners and lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

## II.     PARTIES

### A.     Plaintiffs

### Sherrell Moses (Louisiana)

10.     Plaintiff Sherrell Moses is a Louisiana citizen who lives in Kenner, Louisiana. Ms. Moses purchased a used 2018 Nissan Sentra in Kenner, Louisiana in or around April 2021. Had Ms. Moses been informed that her vehicle suffered from the CVT Defect, she would not have purchased it. Ms. Moses's vehicle was designed, manufactured, distributed, advertised, marketed and warranted by Nissan.

11.     About six months after purchase, Ms. Moses began to experience the CVT Defect which gradually worsened over time. For example, Ms. Moses's vehicle hesitates when attempting to pick up speed after slowing down, and when taking off from a stop. The hesitation is accompanied by excessive revving in which the rpm meter moves but the vehicle does not accelerate commensurately, followed by a jerk or judder when the vehicle does engage.

12.     At all times, Ms. Moses has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

### Ashle Wilson (Tennessee)

13.     Ashle Wilson is a Tennessee citizen who lives in Brownsville, Tennessee. Ms. Wilson purchased a used 2017 Nissan Altima from Carlock Nissan in Jackson, Tennessee in about July 2019. Had Ms. Wilson been informed that her vehicle suffered from the CVT Defect, she would not have purchased it. Ms. Wilson's vehicle was designed, manufactured, sold, distributed, advertised, marketed, and warranted by Nissan.

14.     Approximately a year after purchase, Ms. Wilson began to experience the CVT Defect, including jerking and hesitation when accelerating from a stop and when accelerating while in motion such as, for example, when attempting to merge on to the highway. Carlock

Nissan replaced the transmission assembly under warranty; however, on information and belief, Ms. Wilson's replacement transmission was a remanufactured transmission with an unknown number of miles on it. Additionally, on information and belief, Ms. Wilson's replacement transmission suffers from the same CVT defect as her original transmission.

15.     At all times, Ms. Wilson has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**B.     Defendants**

16.     Defendant Nissan North America, Inc. ("NNA") is a California corporation with its principal place of business located at One Nissan Way, Franklin, Tennessee 37067 and doing business in Tennessee and throughout the United States.

17.     Founded in 1933 and headquartered in Yokohama, Japan, Defendant Nissan Motor Co., Ltd. ("NML") is a corporation organized under the laws of Japan. NML manufactures and distributes automobiles and related parts. It also provides financing services. NML delivers a comprehensive range of products under various brands that are manufactured in Japan, the United States, Mexico, the United Kingdom and other countries. NML is the parent and 100% owner of NNA.

18.     At all relevant times, NNA and NML were engaged in the business of designing, manufacturing, marketing, distributing, and selling automobiles, including but not limited to the Class Vehicles, and other motor vehicles and motor vehicle components, in Tennessee and throughout the United States.

19.     Whenever, in this Complaint, reference is made to any act, deed or conduct of Defendants, the allegation means that Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendants.

**III.     JURISDICTION**

20.     This is a class action.

21.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs.  This court also has federal question jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs' claims under the Magnuson-Moss Act arise under federal law.  This Court has personal jurisdiction over NNA because its principal place of business is in Franklin, Tennessee, and Defendants' otherwise have sufficient minimum contacts with Tennessee, and/or otherwise intentionally avails themselves of the markets within Tennessee, through the promotion, sale, marketing and distribution of their vehicles in Tennessee, so as to render the exercise of jurisdiction by this Court proper and necessary.

## IV.     VENUE

22.     Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within the Middle District of Tennessee.

## V.     NISSAN'S KNOWLEDGE OF THE CVT DEFECT

23.     For years, Nissan has designed, manufactured, distributed, sold, and leased the Class Vehicles.  Upon information and belief, Defendants have sold, directly or indirectly through dealers and other retail outlets, many thousands of Class Vehicles nationwide.

24.     Plaintiffs and Class Members are intended third-party beneficiaries of contracts between Nissan and its dealerships; specifically, they are the intended beneficiaries of Nissan's warranties.  The dealerships were not intended to be the ultimate consumers of the Class Vehicles, and the warranty agreements were designed for and intended to benefit the ultimate consumers only.

25.     The CVT Defect causes the Class Vehicles' to unexpectedly malfunction by hesitating, stalling, jerking, lurching, revving, shaking, juddering and/or failing prematurely.  The CVT Defect presents a safety hazard that renders the Class Vehicles unreasonably dangerous to consumers due to, *inter alia*, the impact of the Defect on driver's ability operate the Class Vehicle as expected.

26.     Plaintiffs are informed and believe, and based thereon allege, that, prior to placing the Class Vehicles in the stream of commerce, Nissan became aware of the CVT Defect through sources not available to Plaintiffs and Class Members, including, but not limited to, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Nissan's network of dealers and directly to Nissan, aggregate warranty data compiled from Nissan's network of dealers, testing conducted by Nissan in response to consumer complaints, and repair order and parts data received by Nissan from Nissan's network of dealers.  On information and belief, Nissan actively monitors and records consumer complaints made to Nissan's network of dealers as well as all service and repair work done related to the CVT Defect at its network of dealers

27.     Nissan's CVT has been plagued with the same or similar recurrent problems (i.e., hesitation, shaking, juddering, premature failure, etc.) for over a decade.  In 2009 Nissan voluntarily doubled the powertrain warranty coverage of 5 years/60,000 miles to 10 years/120,000 miles for a large part of its fleet, including the 2003-2010 Murano; 2007-2010 Versa SL; 2007-2010 Sentra; 2007-2010 Altima; 2007-2010 Maxima; 2008-2010 Rogue; and 2009-2010 Cube.[2] Nissan also reported that "in the unlikely event that your vehicle's transmission should need repair beyond the extended warranty period we are working to decrease the cost of repair."[3]

28.     Nissan continued to experience such trouble with its CVTs that in December 2013 Nissan's then-CEO, Carlos Ghosn, announced that Nissan would increase its oversight of CVT supplier JATCO, Ltd.[4]  Nissan further explained that it was necessary to increase its oversight of

---

[2] Frequently Asked Questions, available at:
https://web.archive.org/web/20100323050249/http://www.nissanassist.com/faqs.php?menu=3
[3] *See* Customer Satisfaction Program, CVT Program Details available at:
https://web.archive.org/web/20100124032242/http://www.nissanassist.com/ProgramDetails.php?menu=2 (last visited Jan. 22, 2021).
[4] Nissan Presses Jatco to end CVT glitches, Automotive News https://www.autonews.com/article/20131202/OEM10/312029972/nissan-presses-jatco-to-end-cvt-glitches (Dec. 2, 2013).

JATCO because continued customer service issues had begun to cut into Nissan's profits.[5] However, Nissan's vehicles continued to be plagued with CVT issues thereafter.

29. Nissan has issued scores of Technical Service Bulletins ("TSBs") concerning the Class Vehicles and predecessor Nissan vehicles with the same or substantially similar CVT which evidence its presale knowledge of the CVT Defect.

30. For example, on April 27, 2017, Nissan issued NTB15-015h applicable to the 2013-2017 Altima with V6 engine, among other vehicles, concerning "reports of a transmission judder (shake, shudder, single or multiple bumps or vibration)." The 2013-2016 Altima was the subject of a prior Class Action settlement in which the warranty on the CVT was extended by 24 months/24,000 miles, whichever comes first. *See Christopher Gann, et al. v. Nissan North Am., Inc.*, No. 3:18-cv-00966 (M.D. Tenn.). On November 8, 2018, Nissan issued NTB18-077 applicable to the 2017-2018 Sentra, among other vehicles, regarding hesitation and/or lack of power. The 2013-2017 Sentra was also was the subject of a prior Class Action settlement in which the warranty on the CVT was extended by 24 months/24,000 miles, whichever comes first. *See Patricia Weckworht, et al. v. Nissan North Am., Inc., Case No.* 3:18-cv-00588 (M.D. Tenn.).

31. Nissan has continued to issue TSBs concerning the CVTs in the Class Vehicles due to ongoing performance issues.

32. On information and belief, Defendants issued the above TSBs to address problems being caused by the CVT Defect. Defendants had and have a duty to disclose the CVT Defect and the associated repair costs to Class Vehicle owners, among other reasons, because the Defect poses an unreasonable safety hazard; because Defendants had and have exclusive knowledge and/or access to material facts about the Class Vehicles and their CVTs that were and are not known to or reasonably discoverable by Plaintiffs and other Class Members; and, because Defendants have actively concealed the CVT Defect from its customers. Further, because none

---

[5] *Id.*

of the above TSBs were issued as part of a formal recall, they were much more likely to be overlooked by dealers, and unknown to consumers.[6]

## VI.    EXAMPLE CONSUMER COMPLAINTS

33.    Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced the CVT Defect.

34.    Nissan monitors customers' complaints made to the NHTSA. Federal law requires automakers like Nissan to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat.1800 (2000).

35.    Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id.* Thus, Nissan knew or should have known of the many complaints about the CVT Defect logged by NHTSA Office of Defect Investigation (ODI), and the content, consistency, and large number of those complaints alerted, or should have alerted, Nissan to the CVT Defect.

36.    The following example complaints filed by consumers with the NHTSA and other websites which continue to accrue and demonstrate that the CVT Defect is a widespread, dangerous and unresolved problem:

**Example Nissan Sentra Complaints:**

**NHTSA ID: 11420918, Incident Date June 14, 2021:** MY SENTRA AT AROUND 75MPH STARTS SHIFTING BACK AND FORTH ABNORMALLY BETWEEN GEARS. THE ONLY THING THAT RELEASES IT IS LETTING GO OF GAS,

---

[6] When a vehicle identification number is entered into a dealer computer, the dealer is automatically instructed to perform applicable recalls.  Dealers generally search for other TSBs based on customer complaints, which requires them to often sift through multiple TSBs and attempt to interpret which, if any, are applicable.

FORCING TO DROP SPEED, WHICH ALSO FORCES A SHIFT TO HIGHER GEAR. YOU FEEL A JERK WHEN IT'S JUMPING GEARS, BUT THE RPM ARROW ALSO JERKS BETWEEN,STARTED AROUND 30K MILES AND GETTING WORSE.

**NHTSA ID: 113390273, Incident Date January 6, 2021:** I PURCHASED A NISSAN SENTRA BACK IN JUNE 2020 SO I HAVEN'T HAD IT VERY LONG. IT HAD ROUGHLY ABOUT 52K MILES WHEN I PURCHASED IT AND I PURCHASE IT BECAUSE MY FAMILY HAS HAD INFINITI'S AND NISSAN AND MY DAD WORKS FOR AN INFINITI DEALERSHIP. ALL OF OUR VEHICLES HAVE BEEN VERY RELIABLE. SO WHY WOULD THIS ONE BE ANY DIFFERENT. I RECENTLY HAD AN ISSUE DRIVING THIS VEHICLE WHERE IT JUST STARTED THIS WEIRD JUTTER OR VIBRATION AND THEN THERE WAS LOSE OF POWER/HESITATION AND WOULDN'T GO PAST 45 TO 50 MPH. I LIVE ABOUT 71 MILES AWAY FROM WORK AND HAD A HARD TIME GETTING IT TO WORK. AFTER GETTING OFF WORK I DROPPED MY CAR OFF BY THE CLOSEST NISSAN DEALER TO FIND OUT WHAT WAS GOING ON WITH MY CAR. THE SERVICE ADVISOR CALLED ME BACK TO SAY THAT MY TRANSMISSION WAS DONE AND THAT I NEEDED A NEW ONE. I THEN FOUND OUT THAT THE EXTENDED WARRANTY THAT I PURCHASED FROM THE DEALER EXPIRED ALREADY AND THAT I WOULD HAVE TO PAY FOR A TRANSMISSION IN A CAR THAT I JUST BOUGHT LESS THAN A YEAR AGO. AFTER FURTHER RESEARCH I FOUND WHERE NISSAN HAS A REALLY BAD ISSUE WITH THEIR CVT TRANSMISSIONS AND THAT THERE WAS A RECALL ON THEM. WHEN I ASKED NISSAN DEALER ABOUT IT THEY SAID THAT IT ONLY COVERS UP TO 2017 NISSAN SENTRA. MY DAD DID SOME RESEARCH AND FOUND THAT THERE IS A SERVICE BULLETIN REFERENCE (NTB20-035A) FOR 2018-2019 NISSAN SENTRA; CVT JUDDER. WHEN WE CONTACTED NISSAN CONSUMER AFFAIRS FOR ASSISTANCE THEY SAID THAT MY CAR WASN'T INCLUDED IN THIS, AND THAT THEY WOULDN'T COVER ANYTHING. NISSANS SERVICE BULLETIN SAYS THAT IF ANY OF SEVERAL CODES POPPED UP WHILE DIAGNOSING THE VEHICLE (P2859) REPLACE THE CVT TRANSMISSION. THIS IS MY FIRST VEHICLE PURCHASE ON MY OWN, I'M 23, AND I STILL HAVE TO MAKE THE PAYMENTS ON THIS CAR. I WAS QUOTED A TRANSMISSION REPAIR COST OF 4K TO 5K. NISSAN SHOULD BE RESPONSIBLE FOR THIS ISSUE BEING THAT THEY KNOW OF THE PROBLEM. ANY HELP ON THIS IS GREATLY APPRECIATED. .

**NHTSA ID: 11377601, Incident Date October 14, 2020:** CVT FAILED AT 65000 MILES. EXTENDED WARRANTY REPLACED IT. VEHICLE WAS VERY DANGEROUS TO DRIVE AS IT WAS JERKING, SHUDDERING, REFUSING TO ACCELERATE, AND STALLED TWICE.

**NHTSA ID: 11373563, Incident Date July 4, 2020:** EVERY NIGHT I DRIVE HOME FROM MY NIGHT JOB THE WARNING LIGHT AND MESSAGE COME ON THAT THERE'S AN OBSTRUCTION ON MY FRONT SENSOR. THE CVT IS TRASH, MY RPM KEEPS GOING UP AND DOWN WHEN I DRIVE ON SLIGHT INCLINE AND I

LOOSE SPEED. ONCE, ON THE FREEWAY I LOST OVER 25 MPH WHERE THE FASTEST I COULD GO WAS 40MPH. IT WAS SCARY AND I HAD MY BABY IN THE CAR WITH ME. THE DEALER FORCED ME TO GET THIS CAR AND SAID I WOULDN'T HAVE ANY ISSUES. LIES AND SHAME ON WINTER CHEVROLET OF PITTSBURG CALIFORNIA!!! THEY NOW DON'T RETURN MESSAGES!!!

**NHTSA ID: 11297342, Incident Date October 12, 2020:** AFTER 37,122 MILES THE TRANSMISSION ON MY 2018 NISSAN SENTRA WENT BAD ON ME. I TOOK IT TO THE DEALERSHIP AND THEY INFORMED ME THAT THE ENTIRE TRANSMISSION NEEDED TO BE REPLACED. THE DEALERSHIP ALSO SAID THE FUEL PUMP AND CLUSTER NEEDED TO BE REPLACED. I READ THAT THERE HAVE BEEN OTHER COMPLAINTS MADE ABOUT THE TRANSMISSION SYSTEM FOR THESE CARS, AND THERE SHOULD DEFINITELY BE A RECALL.

**NHTSA ID: 11349933, Incident Date March 9, 2019:** RPMS ARE GOING UP AND DOWN WHEN MAINTAINING THE SAME SPEED . WE TOOK IT BACK TO THE DEALERSHIP AT 9000 MILES AND THEY TOLD US IT'S A SPECIAL TRANSMISSION.BELT DRIVEN NOT GEAR DRIVEN. WE TOOK IT BACK A FEW MORE TIMES AND FINALLY WE TOOK IT TO MIDAS AND THEY TOLD US TO TAKE IT TO DEALERSHIP FOR THE TRANSMISSION PROBLEM AFTER THEY DROVE IT AND NOTICED RPMS GOING UP AND DOWN .

**NHTSA ID: 11318508, Incident Date March 16, 2020:** STOPPED GOING FORWARD WHEN AT TRAFFIC LIGHT WILL ONLY GO IN REVERSE. DEALERSHIP SAYS WARRANTY IS UP AND IT WILL COST 4000$ TO FIX. I AM CONFUSED AS TO HOW A CAR THAT WAS BOUGHT 4/20/2018 HAS THE NEED FOR THE TRANSMISSIOM TO BE REPLACED. THIS CAR HAS HAD REGULAR MAINTENANCE AND I DO NOT BELIEVE AFTER PAYING 479.09 A MONTH FOR THE PAST 23 MONTHS I SHOULD BE SPENDING AN ADDITIONAL 4000$

**NHTSA ID: 11458293, Incident Date March 25, 2022:** CAR WILL ONLY GO IN REVERSE. WHILE DRIVING DOWN A BUSY ROAD MY CAR STOPPED ACCELERATING IN FORWARD AND NOW NO LONGER WILL DRIVE FORWARD AT ALL. I HAVE KEPT UP WITH ALL ROUTINE MAINTENANCE, AND HAD NO WARNING SIGN THAT THIS WAS GOING TO HAPPEN. MY WARRANTY EXPIRED AT 60,000 MILES AND I AM AT 64,000. I BOUGHT THE CAR BRAND NEW IN OCTOBER OF 2018, AND STILL OWE ON IT. SO NOW I AM STUCK WITH A CAR PAYMENT FOR A CAR THAT I CANNOT EVEN DRIVE.

**NHTSA ID: 22456256, Incident Date March 4, 2022, 2019:** I DRIVE A 2018 NISSAN SENTRA SV THE VEHICLE BEGAN HAVING PROBLEMS WITH THE BREAK/ DRIVING ASSISTANCE FEATURE. THE LIGHT IS CONTINUOUSLY TURNING ON AND THAT FEATURE HARDLY EVER WORKS, MAKING ME FEEL UNSAFE AND AT RISK OF MY BREAKS OR SOMETHING ELSE MALFUNCTIONING. TO MAKE MATTERS WORSE, MY TRANSMISSION STOPPED WORKING, CAUSING ME TO NEARLY CRASH/ GET INTO COUNTLESS CAR ACCIDENTS. THIS

DIDN'T ONLY ADD UNNECESSARY STRESS TO MY LIFE BUT MADE ME LATE TO MY OFFICE JOB AND IS NOW COSTING ME THOUSANDS OF DOLLARS TO FIX ! THE WHOLE POINT OF BUYING A NEW OR RELATIVELY NEW CAR IS TO AVOID THESE TYPE OF ISSUES AND THIS IS SIMPLY UNACCEPTABLE! I HAVE SPOKEN TO MANY NISSAN OWNERS AND MORE THAN HALF (ABOUT 8/10) HAVE REPORTED HAVING OR KNOW SOMEONE WHO HAD TRANSMISSION ISSUES, MAKING ME BELIEVE THIS IS A HUGE NISSAN ISSUE. MY TRANSMISSION COMPLETELY GAVE UP ON ME AND I KNOW THAT THIS IS JUST NOT RIGHT. I WORK AT A LAW OFFICE THAT DEALS WITH ACCIDENTS / PERSONAL INJURY AND KNOW ENOUGH TO SAY THIS AIN'T RIGHT. I DEMAND TO BE COMPENSATED FOR SUCH HORRIBLE AND FAULTY VEHICLE THAT HAS COST ME TIME, MONEY, AND UNNECESSARY STRESS.

**NHTSA ID: 11458468 Incident Date March 26, 2022:** MY RPMS DO NOT CATCH UP WITH MY SPEED. WHILE I'M DRIVING RPMS RANDOMLY FLUCTUATE. THE TRANSMISSION DOESN'T ENGAGE QUICKLY ENOUGH. NOW MY CAR CAN BARELY EVEN STOP QUICKLY ENOUGH. IT GETS STUCK IN A HIGH GEAR AND WHEN I TRY TO ACCELERATE IT JERKS. I CAN BARELY STOP MY CAR I HAVE STOP SO FAR IN ADVANCE AND EVEN THAN IT WILL BARELY STOP. THIS A HUGE SAFETY RISK FOR MYSELF AND OTHERS. THIS CAR STILL FAIRLY NEW SHOULD NOT HAVE THESE ISSUES. I ALSO DID NOT ANY WARNING SIGNS OR CHECK ENGINE LIGHT NOTHING. I TAKE CARE OF MY CAR. THIS CAR COULD POTENTIALLY TAKE THE LIVES OF OTHERS IT NEEDS TO BE RECALLED IMMEDIATELY.

**NHTSA ID: 11455641 Incident Date January 1, 2022:** NISSIAN HAS A KNOWN ISSUE WITH CVT TRANSMISSIONS. I'VE HAD MY VECHILE FOR LESS THEN A YEAR AN I'M ALREADY BEING TOLD I NEED A NEW TRANSMISSION IT'S UNACCEPTABLE. THE ISSUES MY CVT HAS CAUSED IS EXTREMELY UNSAFE AN DANGEROUS TO MYSELF AN MY FAMILY AN OTHER DRIVERS. MY NISSIAN WOULD FAIL TO ACCELERATE ALMOST CAUSING ME TO BE SIDESWIPED ON MULTIPLE!!! OCCASIONS , THESE VEHICLES HAD TO SWERVE AROUND ME BECAUSE MY VECHILE WOULD SIMPLY NOT GO. THERE'S BEEN TOO MANY CLOSE CALLS REGARDING MY VECHILES AN THE DANGEROUS SITUATIONS IT'S OUT MYSELF AN OTHER DRIVERS ON THE ROAD IN. NUMEROUS OCCASIONS HAS IT FAILED TO ACCELERATE PROPERLY , NUMEROUS OCCASIONS THE VECHILE WASN'T SWITCHING GEARS PROPERLY CAUSING LATE REACTIONS IN THE VECHILE AN A.INCREASED RISK FOR ACCIDENTS . NUMEROUS OCCASIONS HAS MY VECHILE DECIDE TO ACCELERATE WHEN I WASNT PRESSING THE GAS FOR IT TO DO SO , CAUSING ME TO BREAK OR BREAK HARD AT TIMES I SHOULDN'T OF . NUMEROUS OCCASIONS HAS MY VECHILE LITERALLY DECIDE IT WASN'T GOING TO DRIVE FORWARD ANYMORE AN I WOULD HAVE TO GET OUT OF TRAFFIC ON HIGHWAY AN TURN THE VECHILE OFF AN TURN IT BACK ON FOR IT TO ACT PROPERLY.. THIS VECHILE HAS CAUSED TO MANY POTENTIAL ACCIDENTS .. I WOULD HATE FOR SOMEONE

TO ACTUALLY GET HURT FOR NISSIAN TO ACTUALLY CARE ABOUT THEIR CUSTOMERS. NISSIAN STATED THEY BASICALLY DIDN'T CARE AN I WOULD HAVE TO PAY OUT IF POCKET FOR EXPENSES REGARDLESS OF HOW NEW OR HOW LOW THE MILAGE ON MY VECHILE WAS..

**NHTSA ID: 11453046 Incident Date February 16, 2022:** GOING AT A SPEED OF 65 MPH+ THE TRANSMISSION OR WHAT EVER IT SEEMS TO BE CUTTING IN AND OUT, I HAVE TO EITHER LAY OFF THE GAS OR PULLOVER AND LET IT SIT FOR A BIT FOR IT TO STOP ACTING UP AND IT'LL STOP FOR A WHILE AND IT ACTS BACK UP AGAIN, I HAVEN'T HAD THE CAR FOR A YEAR YET, THERE WERE A FEW TIME I ALMOST GOT HIT AND SWERVED OFF THE ROAD BECAUSE OF IT I USUALLY HAVE THE KIDS WITH ME AND THE LAST THING I NEED IS TO HAVE SOMETHING HAPPEN TO THEM OR ME I ASKED WHAT CAN BE DONE ABOUT AND PRETTY MUCH WAS TOLD THAT IT WAS MY PROBLEM I SEE MANY COMPLAINTS PERTAINING TO THIS ISSUE, IS IT GONNA TAKE A DEATH FOR SOMETHING TO BE DONE, IM QUITE DISAPPOINTED ABOUT THIS AND ON TOP OF THIS THERE IS 2 RECALL FOR THIS TYPE OF VEHICLE WHAT CAN BE DONE ABOUT THIS?!

**NHTSA ID: 11451744 Incident Date February 13, 2022:** AT A SPEED OF 70 MPH IN THE OUTSIDE TEMPERATURE OF 85 DEGREES OR MORE THE TRANSMISSION SEEMS TO BE CUTTING OUT NOT ALLOWING ME TO GET OUT OF HARMS WAY IN AN EMERGENCY SITUATION. THE CAR WILL NOT GO ANY FASTER. I CAN NOT GO FASTER TO CHANGE LANES.

**NHTSA ID: 11447594 Incident Date January 15, 2022:** I BOUGHT MY NISSAN SENTRA IN FEBRUARY OF 2019 AND ITS NOW JANUARY 15 2022 WITH 98,000 MILES AND THE TRANSMISSION IS DONE, I HAVE TO PAY MONEY TO GET THE TRANSMISSION FIXED ON MY CAR WHEN ITS ONLY BEEN 2 YEARS SINCE I GOT THE CAR AND NOW I ALREADY HAVE TO FIX IT, THIS SEEMS UNFAIR, I HAVE DONE THE STANDARD MAINTENANCE ON IT AND I CANT BELIEVE I HAVE TO GET IT FIXED. AT THE TIME OF THIS REPORT IT JUST HAPPEN AND I STILL HAVE TO FIND A WAY TO PAY FOR IT TO GET FIXED

**NHTSA ID: 11433401 Incident Date January 21, 2021:** THE CONTACT OWNS A 2019 NISSAN SENTRA. THE CONTACT STATED WHILE DRIVING 45 MPH AND DEPRESSING ON THE ACCELERATOR PEDAL, THE VEHICLE WOULD NOT FULLY ACCELERATE AS DESIRED. THERE WAS AN UNKNOWN WARNING LIGHT ILLUMINATED. THE CONTACT ACTIVATED THE HAZARD LIGHTS AND PULLED THE VEHICLE OVER TO THE SIDE OF THE ROAD. THE CONTACT WAITED A FEW MINUTES AND RESTARTED THE VEHICLE AND WAS ABLE TO CONTINUE TO DRIVE TO HER RESIDENCE. THE CONTACT TOOK THE VEHICLE TO AN INDEPENDENT MECHANIC WHO DIAGNOSED THE VEHICLE WITH A MAJOR TRANSMISSION FAILURE. THE CONTACT TOOK THE VEHICLE TO THE LOCAL DEALER AND IT WAS AGREED THAT THE TRANSMISSION WAS FAULTY. THE CONTACT WAS INFORMED THAT THE MECHANIC COULD

NOT REPAIR THE VEHICLE BECAUSE THEY COULD NOT FIND THE CODING FOR THE REPAIR IN THEIR SYSTEM. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 35,901.

**NHTSA ID: 11431336 Incident Date August 28, 2021:** WHEN DRIVING AT SPEEDS ABOVE 70 MPH, THE RPM'S START TO SURGE. GOING FROM 2.5 RPMS TO 5 RPMS WITHOUT ANY ACCELERATION IN SPEED FROM THE DRIVER. I HAVE VIDEO OF IT WHEN THE CRUISE CONTROL WAS BEING USED AND THE RPMS SURGED AND FELL BACK. THE FUEL EFFICIENCY SCREEN ALSO SHOWS A DECREASE IN EFFICIENCY WHEN THE RPMS GO UP. HAVE ALSO HAD A LOSS OF POWER WHEN TRYING TO PASS AND TRIED TO INCREASED SPEED - YET THE ENGINE SURGED/FALTERED. IT HAPPENS EVERY TIME I EXCEED 70 MPH. I PICKED THE DATE WHEN I HAVE VIDEO OF THIS OCCURRING. HOWEVER, IT HAPPENS WHENEVER I EXCEED 70MPH.

**NHTSA ID: 11419850 Incident Date June 6, 2021:** TRANSMISSION SHUDDERS AND LOSES POWER WHEN NEEDING TO QUICKLY ACCELERATE. NISSAN HAS PAID ME AN INCONVIENECE FEE BECAUSE ALL OF THEIR 2019 NISSAN SENTRA SR MODELS EXPERIENCE THE SAME ISSUE. THIS IS EXTREMELY DANGEROUS! WHEN NEEDING TO GET OUT OF A SITUATION QUICKLY, THE VEHICLE SHUDDERS AND HESITATES BEFORE CATCHING A GEAR. THIS HAS HAPPENED TO ME IN AN INTERSECTION. SOMEONE RAN A REDLIGHT AND I NEED TO MOVE QUICKLY TO AVOID AN ACCIDENT. THE VEHICLE SPUTTERED AND WHEN IT CAUGHT IT'S GEAR, ALMOST LURCHED ME INTO ONCOMING TRAFFIC. NISSAN HAS PLACED 7 TRANSMISSIONS IN MY CAR AND ALL ARE THE SAME. I NEVER TOOK THEIR REPLACEMENT CAR BECAUSE WHEN I DROVE TWO OTHER OF THE SAME MODELS OF MY CAR. THEY DID THE SAME THING! NISSAN NEEDS TO BE HELD ACCOUNTABLE AND FIND A WAY TO FIX THE TRANSMISSION SO IT DOES NOT DO THIS SHUDDER ANYMORE. I'VE SEEN MANY CONSUMER REVIEWS THAT STATE THE SAME PROBLEM. I FEEL THIS IS WIDESPREAD ENOUGH AND A BIG ENOUGH SAFETY DEFECT THAT NISSAN NEEDS TO FIX BEFORE IT KILLS SOMEONE BECAUSE THEY CAN MOVE OUT OF THE WAY IN TIME.

**Example Nissan Altima Complaints**

**NHTSA ID: 11465575 Incident Date March 12, 2020:** THE TRANSMISSION ON THE VEHICLE FAILED TO WORK CAUSING ME TO BE UNABLE TO ACCELERATE WHILE DRIVING THE VEHICLE. THIS PUT ME IN DANGER AS I WAS DRIVING ON THE HIGHWAY AND ALMOST GOT HIT. THERE WERE NO WARNING SIGNS PRIOR TO THE ISSUE OCCURRING. NO CHECK ENGINE LIGHT OR ANYTHING CAME ON.I CALLED THE NISSIAN CUSTOMER CARE LINE AND WAS TOLD I NEEDED TO BRING IT IN AND PAY MONEY TO GET IT LOOKED AT FOR THEM TO DECIDE IF THEY WOULD HELP ME. I TOOK IT IN, PAID A SUBSTANTIAL AMOUNT OF MONEY JUST FOR THEM TO TELL ME THEY WOULD NOT HELP.

MY CASE IS NOT AN ANOMALY. AFTER RESEARCHING ONLINE, THOUSANDS OF INDIVIDUALS ARE HAVING THE SAME ISSUE WITH THEIR NISSAN ALTIMA TRANSMISSIONS AFTER OWNING THE VEHICLES FOR ONLY A RELATIVELY SHORT PERIOD OF TIME. THIS IS DANGEROUS AND IRRESPONSIBLE FOR NISSIAN TO NOT TAKE RESPONSIBILITY FOR A CLEAR FLAW IN DESIGN THAT HAS PUT USERS OF THEIR VEHICLES AT RISK.

**NHTSA ID: 11463739 Incident Date May 7, 2022:** THIS INCIDENT HAPPENED MANY TIMES ON THE HIGHWAY AND NORMAL STREETS, WHEN I STEPPED ON THE PEDAL FOR GAS NOT RESPONDING, AND I NEEDED TO WAIT ALMOST 40 SECONDS, AND LOOKED LIKE I HAD LOST POWER, LIKE THE TRANSMISSION NOT WORKING CORRECTLY

**NHTSA ID: 11455193 Incident Date January 7, 2022:** I WAS IN THE MIDDLE OF AN INTERSECTION TURNING LEFT, AND THE CAR STALLED AND I WAS ALMOST HIT BY ONCOMING TRAFFIC. THE CAR HAS PROBLEMS ACCELERATING AND SHIFTING GEARS. IT WILL GET UP TO 4 RPM'S AND NOT SHIFT. THIS HAS HAPPENED SEVERAL TIMES, AND IS A SAFETY RISK . FORTUNATELY, I WAS NEVER HIT. NISSAN SAYS I NEED A NEED CVT TRANSMISSION. THERE'S A CLASS ACTION SUIT FILED FOR THIS MODEL AND THE CVT TRANSMISSION. HOWEVER, SINCE MY CAR IS 103, 000, NISSAN WILL NOT REPLACE UNLESS 85,000. THIS IS A MANUFACTURER DEFECT THAT NEEDS FIXED ASAP BEFORE SOMEONE GETS IN A TERRIBLE CRASH!

**NHTSA ID: 11440087 Incident Date November 9, 2021:** THE TRANSMISSION SEEMS TO BE GOING. CAR WILL NOT ACCELERATE ACCORDINGLY AND RANDOMLY SLOWS DOWN IN TRAFFIC. HOLDING THE ACCELERATOR TO THE FLOOR ON A SMALL INCLINE I COULD ONLY REACH 44MPH. I LIVE IN AN AREA THAT HAS NO SHOULDERS AND THIS COULD BE A VERY DANGEROUS SITUATION.

**NHTSA ID: 11434499 Incident Date September 27, 2021:** THE TRANSMISSION WITHOUT ANY ADVANCE ISSUE OR PROBLEM BEGAN TO SHIMMY AND SHAKE THE ENTIRE CAR . THE CAR SLOWED DOWN TO LESS THAN 10 MPH WHILE JERKING FORCEFULLY . THE CAR IS AND WAS SERVICED REGULARLY AT NISSAN IN MURFREESBORO TENNESSEE. THERE WAS NO WARNING. NISSAN WAS CALLED AND THEY PICKED UP CAR ON ROLL BACK. THEY SAID TRANSMISSION FAILED. THIS WAS AT MILEAGE LESS THAN 100,000 ACTUAL MILEAGE WAS 93,404. THE INVOICE NUMBER IS 6088347/1 DATED 5/16/20. THIS HAPPENED IN TRAFFIC AND IS A DEFINITE SAFETY ISSUE. NISSAN SHOULD NOT BE PERMITTED TO CONTINUE BUILDING AND SELLING THESE FAULTY C V T TRANSMISSIONS, CONTINUING TO PUT OUR LIFE'S IN JEOPARDY AND FINANCIALLY DEVASTATING US.

**NHTSA ID: 11433764 Incident Date September 6, 2021:** TRANSMISSION STOPPED WORKING WHILE DRIVING THE CAR, AT RELATIVELY LOW MILEAGE. NO WARNING LIGHTS. CAR WOULD JUST NO LONGER ACCELERATE.

**NHTSA ID: 11424862 Incident Date June 23, 2021:** MY 2017 ALTIMA SR IS AGAIN EXPERIENCING A DELAY WHEN ACCELERATING FROM A STOP. IT REVS UP TO ABOUT 3500-4000 RPM'S FOR A COUPLE OF SECONDS NO MATTER HOW FAR DOWN THE PEDAL IS. ONLY GETS UP TO ABOUT 20 MPH THOUGH. THEN IT WILL FINALLY GO. THERE IS NO CHECK ENGINE LIGHT AND NO CODES. IF I TURN THE CAR OFF, IT'S LIKE IT RESETS AND HAS MORE POWER AFTERWARDS. THIS HAPPENED 14 MONTHS AGO AS WELL. I HAD TO SERVICE THE TRANSMISSION AND IT WAS OK AFTER THAT. NOT EVEN 18,000 MILES LATER AND IT IS DOING IT AGAIN.

**NHTSA ID: 11413037 Incident Date April 20, 2021:** TL* THE CONTACT OWNS A 2017 NISSAN ALTIMA. THE CONTACT STATED THAT WHILE THE VEHICLE WAS STOPPED AT A RED TRAFFIC LIGHT, THE VEHICLE STALLED AFTER THE ACCELERATOR PEDAL WAS DEPRESSED. THE CHECK ENGINE WARNING WAS LIGHT ILLUMINATED. THE VEHICLE WAS TOWED TO NISSAN OF MISSION HILLS (11000 SEPULVEDA BLVD, MISSION HILLS, CA 91345) TO BE DIAGNOSED. THE CONTACT WAS INFORMED THAT THE TRANSMISSION NEEDED TO BE REPLACED. THE SENSOR FOR THE BRAKE PADS WERE REPLACED HOWEVER, THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 76,000.

**NHTSA ID: 11406970 Incident Date November 5, 2018:** CVT TRANSMISSION IS JERKING, STALLING, SHUDDERING, AND HESITATING WHILE DRIVING. CAR ONLY HAS 65K MILES. ISSUE HAS BEEN HAPPENING RANDOMLY FOR ABOUT A WEEK. I DO NOT FEEL COMFORTABLE DRIVING IN THE CAR ANYMORE BECAUSE I FEEL THAT THIS MALFUNCTION CAN EVENTUALLY CAUSE AN ACCIDENT.

**NHTSA ID: 11388775 Incident Date November 7, 2020:** WHEN I WAS DRIVING MY CAR AND STOPPING AT A TRAFFIC LIGHT AND WHEN I WOULD START TO DRIVE AGAIN THE CAR AT TIMES HAS A PROBLEM WITH ACCELERATION AND ALL OF SUDDENLY THE CHECK ENGINE LIGHT CAME ON I SCANNED THE ENGINE CODE AND IT SHOWED A PO 776 TRANSMISSION PRESSURE CONTROL SOLENOID B PERFORMANCE OR STUCK OFF THE CAR WOULD NOT MOVE BUT WHEN I TURNED IT OFF AFTER 10 MINUTES REST THE CAR WILL START TO DRIVE AGAIN BUT WITH VERY SLOW ACCELERATION AND THE RPM WAS VERY HIGH WHEN THE CAR WAS ONLY MOVING AT 20 MPH, MY UNDERSTANDING IS THAT THIS HAPPENS TO A LOT OF THE CARS OWNERS BUT THESE NISSAN CARS NISSAN SHOULD FIX THE PROBLEMS WITH THE TRANSMISSION THEY BUILT KNOW FULL WELL THAT THESE TRANSMISSIONS ARE NO GOOD ,CURRENTLY THERE'S NO RECALLS ON THE 2017 NISSAN ALTIMA SV WITH THIS ISSUE I WILL NEVER BUY ANOTHER NISSAN AGAIN TILL THEY FIX THE TRANSMISSION PROBLEMS COSTING THE CUSTOMERS MONEY AND NOT FIXING THE PROBLEMS WITH THEIR BAD TRANSMISSION THAT THEY KNOW ABOUT SHAME ON NISSAN THE TRASH

VEHICLES OF THE CENTURY ONLY GOOD FOR A SHORT TIME THEN IT JUNK AFTERWARDS

**NHTSA ID: 11388338 Incident Date January 10, 2021:** MY 2017 ALTIMA HAD BEEN JERKING, ALMOST FELT LIKE THE TRANSMISSION WAS SLIPPING. THIS WOULD OCCUR AT RANDOM ACCELERATION CAUSING THE VEHICLE TO STALL FOR BRIEF SECONDS BEFORE IT WOULD ACTUALLY ACCELERATE. ON TOP OF THAT VEHICLE HAS NOW STARTED A LOUD WINING SOUND THAT GETS LOUDER WHEN TRYING TO ACCELERATE. THE CAR WILL NOT MOVE FOR SEVERAL SECONDS AND THEN GRADUALLY IT WILL BEGIN TO TAKE OFF. THIS HAPPENS AT EVERY STOP OR SLOW DOWN MADE. MY CRUISE CONTROL NO LONGER WORKS EITHER. SEVERAL TIMES IN THE PAST I HAD ISSUES WITH THE VEHICLE NOT WANTING TO SHIFT OUT OF FIRST GEAR. SINCE THEN THIS IS WHAT HAS OCCURED. AT THIS POINT I CAN NO LONGER DRIVE THE VEHICLE DUE TO NO ACCELERATION AND IM AFRAID THAT I MIGHT CAUSE AN ACCIDENT DUE TO EXTREMELY SLOW IF NOT ANY TAKE OFF FROM ANY STOP. I AM VERY UPSET OVER THIS ISSUE CONSIDERING EVERYTHING I HAVE READ UP ON ALL LEADS BACK TO THE CVT TRANSMISSION PROBLEMS FROM SEVERAL OTHER OWNERS, AND THE FACT THAT SEVERAL RECALLS HAVE BEEN MADE DUE TO THIS, BUT FOR SOME REASON NOT THE 2017 ALTIMA? IT IS APPARENT TO ME THAT THIS YEAR HAS ALSO BEEN AFFECTED. I AM A SINGLE MOTHER AND CAN'T AFFORD ANOTHER EXSPINCE AT THIS TIME ESPECIALLY SINCE I LOST MY JOB DUE TO COVID-19. NOW I AM UNEMPLOYED AND CANT DRIVE MY CAR DUE TO TRANSMISSION PROBLEMS THAT OBVIOUSLY SEEMS TO BE A REACCURING PROBLEM FOR NISSANS WITH THE CVT TRANSMISSIONS.

37.     Although Defendants were aware of the widespread nature of the CVT Defect in the Class Vehicles, and the grave safety risk posed by it, Defendants took no steps to notify customers of the CVT Defect or to provide them with any relief.

38.     Customers have reported the CVT Defect in the Class Vehicles to Defendants directly and through its dealers.  As a result of these reports and its own internal testing, among other things, Defendants were fully aware of the CVT Defect contained in the Class Vehicles throughout the Class Period.  Nevertheless, Defendants actively concealed the existence and nature of the CVT Defect from Plaintiffs and the other Class Members at the time of purchase or repair and thereafter.  Specifically, Defendants:

a. failed to disclose and/or actively concealed, at and after the time of purchase or repair, any and all known material defects or material nonconformities of the Class Vehicles, including the CVT Defect;

b. failed to disclose and/or actively concealed, at and after the time of purchase or repair, that the Class Vehicles and their CVTs were not in good working order, were defective, and were not fit for their intended purpose; and

c. failed to disclose and/or actively concealed, at and after the time of purchase or repair, the fact that the Class Vehicles and their CVTs were defective, despite the fact that Defendants learned of such defects as early as 2013, if not before.

39. Defendants have deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the CVT Defect contained in the Class Vehicles.

40. Defendants have not recalled the Class Vehicles to repair the CVT Defect, has not offered to its customers a suitable repair or replacement of parts related to the CVT Defect free of charge, and has not offered to reimburse Class Vehicle owners and leaseholders who incurred costs for repairs related to the CVT Defect.

41. Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

42. As a result of the CVT Defect, the value of the Class Vehicles has diminished, including without limitation the resale value of the Class Vehicles. Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's CVT is not defective and will not place vehicle occupants at an increased risk of an accident. Plaintiffs and Class Members further expect and assume that Defendants will not sell or lease vehicles with known safety defects, such as the CVT Defect, and will disclose any such defect to its customers prior to selling or leasing the vehicle, or offer a suitable repair. They do not expect that Defendants would fail to disclose the CVT Defect to them, and continually deny the defect.

## VII.   TOLLING OF THE STATUTE OF LIMITATIONS

43.     Plaintiffs and the other Class Members were not reasonably able to discover the CVT Defect, despite their exercise of due diligence.

44.     Despite their due diligence, Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Class Vehicles and their continuously variable transmission was concealed from them.

45.     In addition, even after Class Members contacted Nissan and/or its authorized agents for vehicle repairs concerning the defective nature of the Class Vehicles and their continuously variable transmissions, they were routinely told by Nissan and/or through their authorized agents for vehicle repairs that the Class Vehicles are not defective.

46.     Hence, any applicable statute of limitation, if any, has been tolled by Nissan's knowledge, active concealment, and denial of the facts alleged herein.  Nissan is further estopped from relying on any statute of limitation because of its concealment of the defective nature of the Class Vehicles and their continuously variable transmissions.

## VIII.   CLASS ACTION ALLEGATIONS

47.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3).   This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

48.     The Class is defined as:

> All individuals who purchased or leased any 2017-2018 Model Year Nissan Altima, 2018-2019 Model Year Nissan Sentra or 2018-2019 Nissan Versa and Versa Note vehicle equipped with a CVT in the United States or its Territories.

49.     Excluded from the Classes is: (1) Defendants, any entity or division in which Defendants have a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those

persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class definitions, and to add subclasses, if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

50. **Numerosity:** Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from, *inter alia*, information and records in Defendants' possession, custody, or control.

51. **Typicality:** The claims of the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like all Class Members, paid for a Class Vehicle designed, manufactured, and distributed by Defendants which is subject to the CVT Defect. The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that he has incurred or will incur the cost of repairing or replacing his malfunctioning continuously variable transmission and related parts as a result of the CVT Defect. Further, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all Class Members.

52. **Commonality:** There are numerous questions of law and fact common to Plaintiffs and the Classes that predominate over any question affecting only individual Class Members. These common legal and factual questions include the following:

   a.  whether the Class Vehicles suffer from the CVT Defect;

   b.  whether the CVT Defect constitutes an unreasonable safety hazard;

   c.  whether Defendant knows about the CVT Defect and, if so, how long Defendant has known of the Defect;

   d.  whether the defective nature of the Class Vehicles' CVT constitutes a material fact;

e. whether Defendant had and has a duty to disclose the defective nature of the Class Vehicles' CVT to Plaintiffs and the other Class Members;

f. whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g. whether Defendant knew or reasonably should have known of the CVT Defect contained in the Class Vehicles before it sold or leased them to Class Members; and

h. whether Defendants are liable for the consumer protection, common law and warranty claims asserted in the twenty-eight causes of action set forth below.

53. **Adequate Representation:** Plaintiffs will fairly and adequately protect the interests of the Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

54. **Predominance and Superiority:** Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

(Violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101, *et. seq*, ("Tennessee CPA"), on behalf of the Class)

55.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

56.    Plaintiff Ashle Wilson brings this cause of action on behalf of herself and on behalf of the members of the Class.

57.    Plaintiff is a "natural person" and "consumer" within the meaning of Tenn. Code Ann. § 47-18-103(2).

58.    Defendants are "person(s)" within the meaning of Tenn. Code. Ann. § 47-18-103(2).

59.    Defendants' conduct described herein affected "trade," or "commerce" or "consumer transactions" within the meaning of Tenn. Code. Ann. § 47-18-103(19).

60.    By failing to disclose and concealing the defective nature of the Class Vehicles' continuously variable transmission from Plaintiffs and prospective Class Members, Defendants violated the Tennessee Consumer Protection Act by: (1) "Representing that goods or services have … characteristic, [or] … benefits …. that they do not have ….;" (2) "Representing that goods or services are of a particular standard, quality or grade … if they are of another;" and (3) "Advertising goods or services with intent not to sell them as advertised." Tenn. Code. Ann. § 47-18-104.

61.    Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

62.    Defendants knew that the Class Vehicles' continuously variable transmissions suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

63.     Defendants were under a duty to Plaintiff and the Class Members to disclose the defective nature of the Class Vehicles' continuously variable transmissions and/or the associated repair costs because:

  a. Defendants were in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' continuously variable transmissions;

  b. Plaintiff and the Class Members could not reasonably have been expected to learn or discover that their continuously variable transmissions have a dangerous safety defect until after they purchased the Class Vehicles; and

  c. Defendants knew that Plaintiff and the Class Members could not reasonably have been expected to learn about or discover the CVT Defect.

64.     By failing to disclose the CVT Defect, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

65.     The facts concealed or not disclosed by Defendants to Plaintiff and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them. Had Plaintiff and other Class Members known that the Class Vehicles' continuously variable transmissions were defective, they would not have purchased the Class Vehicles or would have paid less for them.

66.     Plaintiff and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a CVT Defect. That is the reasonable and objective consumer expectation for vehicles and their continuously variable transmissions.

67.     As a result of Defendants' misconduct, Plaintiff and the other Class Members have been harmed and have suffered actual damages in that the Class Vehicles and their continuously variable transmissions are defective and require repairs or replacement.

68.     As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff has suffered and will continue to suffer actual damages.

69.     Accordingly, Plaintiff seeks actual damages, restitution, statutory and punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper under Tenn. Code. Ann. § 47-18-109(a), *et seq*, due to Defendants' failure to rectify or agree to adequately rectify its violations as detailed above.

## SECOND CAUSE OF ACTION

(Breach of Implied Warranty, Tenn. Code. Ann. § 47-2-314 *et. seq*., on behalf of the Class)

70.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

71.     Plaintiff Alshe Wilson brings this cause of action on behalf of herself and the members of the Class and, in the alternative.

72.     Defendants are merchants with respect to motor vehicles.

73.     Defendants provided Plaintiff and Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things: (i) a warranty that the Class Vehicles' transmission designed, manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles' transmission would be fit for their intended use while the Class Vehicles were being operated.

74.     Contrary to the applicable implied warranties, the Class Vehicles, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff and the other Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, as described more fully above,

75.     Defendants were on notice of the CVT Defect as discussed more fully above.

76.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff has been damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

(Violation of the Louisiana Unfair Trade Practices Act, La. Stat. Ann. § 51:1401 *et seq.*, on behalf of the Class)

77.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

78.     Plaintiff Sherrell Moses brings this cause of action on behalf of herself and members of the Class.

79.     By failing to disclose and concealing the defective nature of the Class Vehicles' continuously variable transmission from Plaintiffs and prospective Class Members, Defendants violated the Louisiana Unfair Trade Practices Act.

80.     Defendants knew that the Class Vehicles' continuously variable transmissions suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

81.     Defendants were under a duty to Plaintiff and the Class Members to disclose the defective nature of the Class Vehicles' continuously variable transmissions and/or the associated repair costs because:

  a. Defendants were in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' continuously variable transmissions;

  b. Plaintiff and the Class Members could not reasonably have been expected to learn or discover that their continuously variable transmissions have a dangerous safety defect until after they purchased the Class Vehicles; and

  c. Defendants knew that Plaintiff and the Class Members could not reasonably have been expected to learn about or discover the CVT Defect.

82.     By failing to disclose the CVT Defect, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

83.     The facts concealed or not disclosed by Defendants to Plaintiff and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.  Had Plaintiff

and other Class Members known that the Class Vehicles' continuously variable transmissions were defective, they would not have purchased the Class Vehicles or would have paid less for them.

84. Plaintiff and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a CVT Defect. That is the reasonable and objective consumer expectation for vehicles and their continuously variable transmissions.

85. As a result of Defendants' misconduct, Plaintiff and the other Class Members have been harmed and have suffered actual damages in that the Class Vehicles and their continuously variable transmissions are defective and require repairs or replacement.

86. As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff has suffered and will continue to suffer actual damages.

**FOURTH CAUSE OF ACTION**
(Breach of Implied Warranty Under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, on behalf of the Class)

87. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

88. Plaintiffs Sherrell Moses and Ashle Wilson bring this cause of action on behalf of themselves and members of the Class.

89. Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

90. Defendants are "supplier(s)" and "warrantor(s)" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

91. The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

92. Defendants' implied warranty is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

93. Defendants breached the implied warranty by virtue of the above-described acts.

94. Plaintiffs and the other Class Members notified Defendants of the breach within a reasonable time and/or were not required to do so. Defendants were also on notice of the CVT

Defect from, among other sources, the complaints and service requests it received from Class Members and its dealers.

95.     Defendants' breach of the implied warranty deprived Plaintiffs and Class Members of the benefits of their bargains.

96.     As a direct and proximate result of Defendants' breach of the implied and express warranties, Plaintiffs and the other Class Members sustained damages and other losses in an amount to be determined at trial.  Defendants' conduct damaged Plaintiffs and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, and costs, including statutory attorney fees and/or other relief as appropriate.

## FIFTH CAUSE OF ACTION
### (Fraudulent Omission behalf of the Class)

97.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

98.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Class.

99.     Defendants knew that the Class Vehicles' suffered from an inherent defect, were defectively designed and/or manufactured and were not suitable for their intended use.

100.     Defendants concealed from and failed to disclose to Plaintiffs and Class Members the defective nature of the Class Vehicles and their CVTs.

101.     Defendants were under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles' CVTs because:

a.   Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVTs;

b.   Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their CVTs have a dangerous safety defect until after they purchased or leased the Class Vehicles;

c.   Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the CVT prior to purchase or lease; and

d.   Defendants actively concealed the defective nature of the Class Vehicles' CVTs from Plaintiffs and Class Members at the time of sale and thereafter.

102.    The facts concealed or not disclosed by Defendants to Plaintiffs and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendants' Class Vehicles or pay a lesser price for them. Had Plaintiffs and Class Members known about the defective nature of the Class Vehicles' CVTs, they would not have purchased or leased them, or would have paid less for them.

103.    Defendants concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles' CVTs in order to induce Plaintiffs and Class Members to act thereon.  Plaintiffs and the other Class Members justifiably relied on Defendants' omissions to their detriment.  This detriment is evident from Plaintiffs' and Class Members' purchase or lease of Defendants' defective Class Vehicles.

104.    Defendants continued to conceal the defective nature of the Class Vehicles' transmissions even after Class Members began to report the problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem today.

105.    As a direct and proximate result of Defendants' misconduct, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

<u>**SIXTH CAUSE OF ACTION**</u>
(Unjust Enrichment on behalf of the Class)

106.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

107.    Plaintiffs bring this cause of action on behalf of themselves and the members of the Class

108.    As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the CVT Defect in their vehicles and the concealment of the Defect, Defendants

charged a higher price for the Class Vehicles than the vehicles' true value and Defendants obtained monies which rightfully belong to Plaintiffs and other Class Members.  It would be inequitable and unjust for Defendants to be unjustly enriched in this manner.  Plaintiffs seek the return of these ill-gotten gains.

## **RELIEF REQUESTED**

109.     Plaintiffs on behalf of themselves and all others similarly situated, request that the Court enter judgment against Defendants, and issue an order providing the following relief:

a.     Certifying the proposed Class and designating Plaintiffs as a named representatives of the Class, and designating the undersigned as Lead Class Counsel and Executive Committee Counsel;

b.     A declaration that Nissan is financially responsible for notifying all Class Members about the defective nature of the CVT in the Class Vehicles;

c.     An order directing Defendants to provide notice, in a form pre-approved by the counsel identified below, to all current owners or lessees of the Class Vehicles, and in the said notice offer to replace the defective CVT contained in every Class Vehicle with a non-defective CVT;

d.     An order directing Defendants to provide notice, in a form pre-approved by the counsel identified below, to all current owners and lessees of the Class Vehicles, of an appropriate warranty extension of the Class Vehicles' CVT and related components;

e.     An order directing Defendants to offer reimbursement to all current and former owners and lessees of the Class Vehicles, for all expenses already incurred as a result of the CVT Defect, including but not limited to repairs, diagnostics, and any other consequential and incidental damages (*e.g.*, towing charges, vehicle rentals, etc.);

f.     An order directing Defendants to immediately cease the sale and leasing of the Class Vehicles at authorized Nissan dealerships nationwide without first notifying the purchasers of the CVT Defect, and otherwise immediately cease to engage in the violations of law as set forth above;

g.   Damages and restitution in an amount to be proven at trial;

h.   Any and all remedies provided pursuant to the state consumer protection laws, implied warranty laws, the Magnuson-Moss Warranty Act, common law fraud, common law unjust enrichment and all other legal and equitable claims brought by Plaintiffs;

i.   An award to Plaintiffs and the Class of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

j.   That Defendants disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles, and/or make full restitution to Plaintiffs and Class Members;

k.   An award of attorneys' fees and costs, as allowed by law;

l.   An award of pre-judgment and post-judgment interest, as allowed by law;

m.   Leave to amend the Complaint to add further subclasses and to conform to the evidence produced at trial; and

n.   Such other relief as may be appropriate under the circumstances.

## DEMAND FOR A JURY TRIAL

110.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated: June 14, 2022                    Respectfully submitted,

By: */s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (BPR #23045)
Benjamin A. Gastel (BPR #28699)
**BRANSTETTER, STRANCH**
 **& JENNINGS PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Phone: 615-254-8801
Fax: 615-255-5419
gerard@bsjfirm.com
beng@bsjfirm.com

Samuel J. Strauss*
Alex Phillips*
**TURKE & STRAUSS LLP**
613 Williamson St., Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
sam@turkestrauss.com
alexp@turkestrauss.com

Lynn A. Toops* (No. 26386-49)
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN  46204
Phone: 317-636-6481
Fax: 317-636-2593
ltoops@cohenandmalad.com

*Pro Hac Vice forthcoming*
*Counsel for Plaintiffs*